UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RYAN HUTCHINS, et al., | ) | CASE NO. 1:11CV557 |
| | ) | |
| Plaintiffs, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| vs. | ) | OPINION AND ORDER |
| | ) | |
| T1 TEQUILA, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**CHRISTOPHER A. BOYKO, J.**:

This matter comes before the Court upon numerous pending motions.  For the following reasons, the Motion (ECF DKT #26) of Plaintiffs, Ryan Hutchins and T1 Importing, LLC, to Strike Defendants' Motion to Dismiss or Alternatively, Motion for Change of Venue, or in the Alternative, Motion to Unify Response Date is DENIED; the Motion (ECF DKT #27) of Plaintiffs, Ryan Hutchins and T1 Importing, LLC, for Partial Default Judgment is DENIED; the Motion (ECF DKT #25) of Defendants, German Gonzalez Gorrochotegui, Kay Olsen, Spirit of Hartford, LLC, T1 Tequila, LLC, and Tequigoga, S.A. de C. V., to Dismiss or Alternatively, for Change of Venue is DENIED IN PART but GRANTED IN PART as to Change of Venue; and the Motion (ECF DKT #30) of

Defendants, German Gonzalez Gorrochotegui, Kay Olsen, Spirit of Hartford, LLC, T1 Tequila, LLC, and Tequigoga, S.A. de C.V., to Set Aside Default is GRANTED.

## I. BACKGROUND

Plaintiffs, Ryan Hutchins and T1 Importing, LLC d/b/a Ryan Hutchins Importing, brought this lawsuit, arising out of a contract dispute, on March 17, 2011.  Jurisdiction is based upon diversity of citizenship.  Hutchins and Defendants, T1 Tequila, LLC, German Gonzalez Gorrochotegui ("Gonzalez"), and Tequigoga S.A. de C.V. (collectively "T1 Defendants"), allegedly entered into a consulting and marketing agreement, in September of 2009, for the exclusive importing of Defendants' high-end tequila, under the brand name "T1."  Hutchins alleges he agreed to forgo a monthly consulting fee; and that amount would be credited toward the purchase of an equity share in the company T1 Tequila (Tequila Uno).  Hutchins further alleges that he worked full-time on behalf of T1 Defendants, between June of 2009 and September of 2010, by hiring Defendants, Kay Olsen and Spirit of Hartford (a marketing firm specializing in alcohol and spirits), obtaining licenses, assisting in the design of the label and bottle, negotiating a contract for the corks to be used, and ensuring compliance with state and federal laws and regulations.  The Complaint sets out the following Counts:

    I.  Breach of Contract for Specific Performance (shares in company)

    II.  Breach of Contract for Money Damages

    III.  Declaratory Judgment for Breach of Confidentiality Provision

    IV.  Permanent Injunction

    V.  Unjust Enrichment

VI.  Promissory Estoppel/Detrimental Reliance for Specific Performance

VII.  Promissory Estoppel/Detrimental Reliance for Damages ($141,842.52)

VIII.  Fraud

IX.  Tortious Interference with a Business Relationship

X.  For Money Lent ($4,000 to Defendant Gonzalez on March 12, 2010)

**Initial Proceedings**

On May 11, 2011, certified mail service was perfected on Defendants, Olsen and Spirit of Hartford.  On June 2, 2011, a Motion for Appearance Pro Hac Vice, on behalf of Gonzalez, Olsen, Spirit of Hartford, T1 Tequila, LLC, and Tequigoga, was granted for Attorney Karla R. Pascarella of San Antonio, Texas.  On June 1, 2011, Attorney Pascarella acknowledged receipt of the Complaint.  A Stipulated Motion for Extension of Time to Answer was granted, with the Answer due July 5, 2011.  No Answer was filed.

On July 7, 2011, Plaintiffs filed their Motion for Default Judgment.  The Motion requested judgment on Counts II-III, V, and VII-X only.  In a footnote, Plaintiffs indicated that they will pursue the other relief, including an injunction and specific performance, following discovery.

On August 24, 2011, the Court set an in-chambers conference (attorneys only) for September 14, 2011, due to confusion over the designation of lead counsel for Plaintiffs; the lack of an affidavit accompanying the Motion for Default Judgment, regarding the competency, minority, or military service of Defendants; and to discuss for which claims judgment is sought, and how and when Plaintiffs intended to present evidence of damages. Defense counsel, Pascarella, should have received court-generated electronic notification of

the default motion and of the conference; but counsel did not appear, and Defendants did not answer or otherwise move in response to the Complaint.

On September 14, 2011, the default motion was ruled deficient, and denied.  Plaintiffs were instructed to re-file according to the Court's instructions.  In a letter, provided to the Court by Plaintiffs' counsel, Attorney Pascarella said she had no notice of the motion or the hearing.

On September 22, 2011, Plaintiffs filed an Application for Entry of Default.  Default was entered by the Clerk.

On September 23, 2011, a hearing was set for October 25, 2011.

Also, on September 23, 2011, Defendants filed a Response in Opposition to Plaintiffs' Application for Entry of Default and a Motion for Leave to File Responsive Pleading after Deadline.  Defense counsel claimed excusable neglect, due to alleged failed notification from the Court's electronic docketing system.

On September 27, 2011, without leave of Court, Defendants filed a Motion to Dismiss or alternatively, to Transfer Venue.

On October 7, 2011, Plaintiffs filed a Motion to Strike and a Motion for Partial Default.

On October 22, 2011, Defendants filed their Motion to Set Aside Clerk's Entry of Default.  In part, defense counsel argued the Clerk's Default Entry should be set aside because "the parties were engaged in settlement negotiations and Defendants took unequivocal actions indicating their intent to defend the suit."

At the October 25, 2011 conference, the parties discussed the pending matters and

-4-

Attorney Pascarella's difficulties with CM/ECF notification.  Her office's e-mail problems were resolved; and, now that local co-counsel has entered an appearance, there should be no notification issues.  The Court encouraged and directed the parties to continue their settlement discussions; and, thereafter, set a settlement conference for December 19, 2011.  Further, the Court ordered the motions for default, for dismissal/ transfer venue; and to strike or set aside withdrawn, pending the outcome of settlement negotiations.

The settlement negotiations were unsuccessful, and the case did not resolve. Therefore, Defendants and Plaintiffs filed Motions (ECF DKT #33 & #34) to reinstate their withdrawn filings.

Although the Court is displeased with this matter's faltering progress and with the procedural errors on both sides, the Court prefers to address the merits of the lawsuit, rather than enter a ruling adverse to a party or parties because of procedural missteps.  Therefore, since the Court finds good cause, and finds Defendants took some action to "otherwise defend" the Complaint, the Court grants Defendants' Motion (ECF DKT #30) to Set Aside Clerk's Entry of Default; denies Plaintiffs' Motion (ECF DKT #27) for Partial Default Judgment; and denies Plaintiffs' Motion (ECF DKT #26) to Strike.

## II. LAW AND ANALYSIS

### Subject matter jurisdiction

Defendants argue that the Court has no subject matter jurisdiction over this case because the contractual amount in controversy cannot exceed $54,200.  Defendants assert that the Complaint contains "hollow" and "ludicrous" allegations; and that Plaintiffs cannot recover more than the face amount of the contract at issue.

Federal courts have the power to adjudicate "civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs and is between... citizens of different states." 28 U.S.C. §1332(a)(1).  "Generally, the party seeking to litigate in federal court bears the burden of establishing the existence of federal subject matter jurisdiction."  *McNutt v. General Motors Acceptance Corp. Of Ind.,* 298 U.S. 178, 189 (1936).

When a plaintiff originally files a claim in federal court, the sum claimed by the plaintiff controls for the purpose of assessing whether the amount-in-controversy requirement contained in 28 U.S.C. § 1332(a)(1) is satisfied, so long as the amount claimed appears to have been made in good faith.  *St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 288-89, (1938).  Such a case will not be dismissed for lack of diversity jurisdiction unless the defendant can demonstrate to a "legal certainty" that the plaintiff was in error regarding the claimed amount-in-controversy.  *Id.* at 289.

On the face of the instant Complaint, Plaintiffs identify damages for work performed under a consulting agreement; out-of pocket expenses totaling more than $100,000; payment due on a $4,000 loan; and an interest (the value of shares is not calculated) in the Mexican corporation, Tequigoga.  Defendants fail to demonstrate that the claimed damages are not recoverable to a "legal certainty;" and the Court finds the amount in controversy is satisfied for purposes of diversity jurisdiction.

**Personal jurisdiction**

When a court approaches a motion to dismiss for lack of personal jurisdiction based solely on written materials and affidavits, "the burden on the plaintiff is relatively slight, [ ... ] and the plaintiff must make only a prima facie showing that personal jurisdiction exists in order to defeat dismissal [ ] [ ... ]." *Ampco System Parking v. Imperial Parking Canada Corp.*, No. 1:11CV1172, 2012WL1066784, at *2 (N.D.Ohio Mar.28, 2012) (quoting *Air Prods. & Controls, Inc., v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir.2007)).  Plaintiff need only establish jurisdictional claims with "reasonable particularity" and the pleadings and affidavits are construed in the light most favorable to plaintiff.  *Id.*  The burden is on the plaintiff, however, to establish that jurisdiction exists, and the plaintiff may not merely stand on his pleadings in the face of a properly supported motion for dismissal.  *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir.1991).  The plaintiff must set forth specific facts showing that the court has jurisdiction.  *Id.*  Therefore, dismissal is proper only if all the specific facts which the plaintiff alleges collectively fail to state a prima facie case for jurisdiction.  *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir.1996).

It is axiomatic that this Court "must apply the law of the forum state to determine whether it may exercise jurisdiction over a non-resident defendant."  *ALTA Analytics, Inc. v. Muuss*, 75 F.Supp. 2d 773, 777 (S.D. Ohio 1999) (citing *American Greetings Corp. v. Cohn*, 839 F.2d 1164, 1167 (6th Cir.1988)).  If jurisdiction is proper under the Ohio long arm statute, the Court must then apply the limits of the Constitutional Due Process Clause in determining whether personal jurisdiction exists over a defendant.  *Id.*

1.  Ohio's Long Arm Statute

The pertinent section of the Ohio long arm statute reads:  "A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:  (1) Transacting any business in this state."  R.C. § 2307.382(A). Courts within the Sixth Circuit have held that "'[t]ransacting business' subsumes the narrower act of contracting." *Stern's Dept's Stores, Inc. v. Herbert Mines Assoc.*, No. C–1–98–844, 1999 WL 33471990, at *5 (S.D. Ohio July 8, 1999) (citations omitted) (quoting *Douglas v. Modern Aero, Inc*., 954 F.Supp. 1206, 1210 (N.D. Ohio 1997)).  The Ohio Supreme Court has likewise held that transacting business "encompasses 'to carry on business,' and 'to have dealings,' and is broader ... than the word 'contract.' "  *Goldstein v. Christiansen*, 638 N.E.2d 541, 544 (Ohio 2012).  Thus, the act of contracting can qualify as transacting business under Ohio's long arm statute.  *ALTA*, 75 F. Supp. 2d at 779.  However, the Court must consider not only the act of contracting itself, but also:  (1) whether the contract represents "transacting business" under the Ohio Revised Code, meaning that the necessary nexus exists between Defendant's business dealings in Ohio and the matters at issue in this case;  and (2) whether the cause of action arises from the contract.  *Id.*

The T1 Defendants allegedly entered into consulting agreements with Plaintiffs, Ohio residents, who, in turn, allegedly retained Olsen and Spirit of Hartford, to assist in marketing T1 Tequila in the United States.  This combination of agreements are the basis for Plaintiffs' breach of contract and business interference claims; therefore, a clear nexus exists between Defendants' dealings in Ohio and the matters at issue in this case.  The Sixth Circuit has held that "if the cause of action is for breach of that contract [with an Ohio resident] ... then the

-8-

cause of action naturally arises from the defendant's activities in Ohio." *Cole v. Mileti*, 133 F.3d 433, 436 (6th Cir.1998).

The Court finds that Hutchins has made a prima facie showing; and that activities of the parties in Ohio rise to the level of "transacting business" under Ohio's long arm statute.

2.  Due Process

If jurisdiction is proper under Ohio's long arm statute, the Court must next determine whether Defendants' contacts with Ohio were sufficient under the Fourteenth Amendment Due Process Clause to allow the Court to exercise jurisdiction.  In order for personal jurisdiction to comply with due process, Defendants must have "minimum contacts" with the forum state "so that the maintenance of the action does not offend 'traditional notions of fair play and substantial justice.' " *Citizens Bank v. Parnes*, 376 F.App'x 496, 502 (6th Cir. 2010).  "Minimum contacts exist where a defendant's conduct and connection with the forum state are such that he would reasonably anticipate being haled into court there." *Id.* (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

According to the Affidavit of Ryan Hutchins, the contracts and relationship between Plaintiffs and Defendants spanned over a year.  The T1 Defendants made the first foray into Ohio to request Hutchins' help with their business, marketing and sales efforts in the United States.  The consulting agreements were negotiated via telephone calls to Ohio, electronic messages (emails) to Ohio, and visits between the parties in Ohio and in San Antonio. Defendants were well aware that any work Hutchins performed on their behalf would largely be done in Ashtabula, Ohio.  Defendants, Olsen and Spirit of Hartford, contacted Plaintiffs in Ohio and sent market analysis documents into Ohio.  Thus, they could easily foresee that their

actions would have consequences in the state of Ohio.

Just as in *Int'l Paper Co. v. Goldschmidt*, No. 1:11-CV-910, 2012 WL 1902557, at *5 (S.D. Ohio May, 25, 2012), the Court found personal availment satisfied when a California employee entered into an employment contract with an Ohio corporation and frequently communicated with Ohio-based employees, received confidential and trade secret information from Ohio, utilized an Ohio-based database system, and visited Ohio for two business meetings, this Court finds Defendants' acts satisfy the purposeful availment prong of the personal jurisdiction analysis.

Further, where " a defendant's contacts with the forum state are related to the operative facts of the controversy, the action will be deemed to have arisen from those contacts." *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1267 (6th Cir. 1996).  Defendants' alleged contacts with Ohio are directly related to all of Hutchins' claims.

Finally, Hutchins must demonstrate that Defendants, or the consequences of their alleged actions, "have a substantial enough connection with [Ohio] to make the exercise of jurisdiction over the [them] reasonable." *Kerry Steel, Inc. v. Paragon Indus.*, 106 F.3d 147, 150 (6th Cir. 1997).  To determine reasonableness, the Court must balance three factors: "the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief." *Fortis Corporate Ins. v. Viken Ship Mgmt.*, 450 F.3d 214, 223 (6th Cir. 2006) (internal citations omitted).  Here, there is little question that defending themselves in Ohio imposes a burden on all the out-of-state Defendants.  However, Ohio has a strong interest in ensuring the enforcement of its laws and of contracts impacting the state's economy.  And, as for Plaintiffs, they undoubtedly have an interest in obtaining fair

-10-

compensation and in protecting their work product and intellectual property.  The Court finds

that this is not the rare instance where Defendants' contacts with Ohio are so minimal that

their burden outweighs the interests of Ohio.  Based on the foregoing, Defendants' Motion to

Dismiss for lack of personal jurisdiction is denied.

**<u>Venue</u>**

        In the alternative to their request for dismissal on jurisdictional grounds, Defendants

ask the Court to transfer venue to the Western District of Texas.  According to Plaintiffs'

Complaint, venue is invoked pursuant to 28 U.S.C. § 1391(a)(2).  The statute reads:

> (a) A civil action wherein jurisdiction is founded only on diversity of
> citizenship may, except as otherwise provided by law, be brought only in (1) a
> judicial district where any defendant resides, if all defendants reside in the
> same State, **(2) a judicial district in which a substantial part of the events
> or omissions giving rise to the claim occurred, or a substantial part of
> property that is the subject of the action is situated,** or (3) a judicial district
> in which any defendant is subject to personal jurisdiction at the time the action
> is commenced, if there is no district in which the action may otherwise be
> brought.  (Emphasis added).

        Pursuant to 28 U.S.C. § 1404(a), this Court has broad discretionary powers to transfer

civil actions.  "For the convenience of parties and witnesses, in the interest of justice, a

district court may transfer any civil action to any other district or division where it may have

been brought."  This section grants the district court discretion to order transfer after

"individualized, case-by-case consideration of convenience and fairness."  *Stewart*

*Organization, Inc. v. Ricoh Corporation*, 487 U.S. 22, 29 (1988) (*citing Van Dusen v.*

*Barrack*, 376 U.S. 612, 622 (1964)).  The district court must balance the "private concerns" of

the parties as well as "the convenience of the witnesses and those public-interest factors of

systemic integrity and fairness that, in addition to private concerns, come under the heading

of 'the interest of justice.'" *Stewart*, 487 U.S. at 30.  The court should take into account, then, the private interests of the parties; the convenience of the parties and the convenience of potential witnesses; the relative ease of access to sources of proof; and public interest concerns.  *Kerobo v. Southwestern Clean Fuels Corp*., 285 F.3d 531 (6th Cir.2002); *Moses v. Business Card Express, Inc*., 929 F.2d 1131, 1136-37 (6th Cir.1991).  "Among the specific private interests a court may consider are plaintiff's choice of forum, the location of books and records and, ***, the convenience of witnesses.  It has been said that plaintiff's choice of forum is entitled to 'great weight.'" *Bacik v. Peek*, 888 F.Supp. 1405, 1414 (N.D.Ohio 1993) (quoting *Gdovin v. Catawba Rental Co.*, 596 F.Supp. 1325, 1327 (N.D.Ohio 1984)).

**<u>Plaintiffs' choice of forum</u>**

Plaintiff, Ryan Hutchins, is an Ohio resident; and Plaintiff, T1 Importing, LLC, is an Ohio limited liability company, with its principal place of business located in Ashtabula, Ohio.  Plaintiffs elected to file their Complaint in the Northern District of Ohio.

Defendant, T1 Tequila, LLC, is a Texas limited liability company, based in San Antonio, Texas.  Defendant, German Gonzalez Gorrochotegui, is a San Antonio, Texas resident.  Defendant, Tequigoga S.A. de C.V., is a Mexican company, based in Mexico City.  Defendant, Kay Olsen, is a Connecticut resident; and Defendant, Spirit of Hartford, LLC, is a Connecticut limited liability company.

Plaintiff's choice of forum is not determinative, but is "instead merely one of the relevant factors in the § 1404(a) analysis." *Young v. Kiebler Recreation*, No. 1:09CV1810, 2010 WL 395224, at *5 (N.D.Ohio Jan. 26, 2010) (citing *Int'l Union, U.A.W. v. Aluminum Co. of America*, 875 F.Supp. 430, 433 (N.D.Ohio 1995)).  However, it becomes the duty of

-12-

the district court to "balance inconveniences and to determine upon which litigant the greater hardship would rest," if change of venue is granted.  *Nicol v. Koscinski*, 188 F.2d 537 (6th Cir. 1951).  That determination is "subject to the rule that unless the balance is strongly in favor of the defendant the plaintiff's choice of forum should rarely be disturbed."  *Id.*, citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947).  On balance, Plaintiffs will suffer practical difficulties if venue is changed; but the Court finds that all Defendants will be more severely inconvenienced if this litigation continues in Ohio.

**Location of relevant records and documents**

The Court finds that the location of relevant records and documents is almost a non-factor in its venue analysis.  With today's computerized preservation and storage methods, and with the frequent use of email communications and transmissions, convenient access to documentary evidence is not a significant factor in the § 1404 determination.

**Convenience of third-party witnesses**

"It has also been said that 'the most important factor, and the factor most frequently mentioned, in passing on a motion to transfer under 28 U.S.C.A. § 1404(a) is the convenience of witnesses'" *Bacik*, 888 F.Supp. at 1414 (quoting 15 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 3851 at 415 (1986)).

In this review, the Court looks at the claims in Plaintiffs' Complaint and considers the expected, relevant testimony.  To reiterate, Plaintiffs allege the following claims:

    I.  Breach of Contract for Specific Performance (shares in company)

    II.  Breach of Contract for Money Damages

    III.  Declaratory Judgment for Breach of Confidentiality Provision

IV.  Permanent Injunction

V.  Unjust Enrichment

VI.  Promissory Estoppel/Detrimental Reliance for Specific Performance

VII.  Promissory Estoppel/Detrimental Reliance for Damages ($141,842.52)

VIII.  Fraud

IX.  Tortious Interference with a Business Relationship

X.  For Money Lent ($4,000 to Defendant Gonzalez on March 12, 2010)

Plaintiffs allege that conversations and meetings occurred in San Antonio, Texas, often at the T1 Defendants' invitation; and that Plaintiff Ryan Hutchins attended a Mexican spirits convention in California.  Witnesses to those occurrences, outside the parties to this case, would be located in Texas or California.  Witnesses to the production and bottling of the tequila, which Plaintiffs were allegedly helping to market in the United States, would be located in Texas.  Witnesses to the alleged use or misappropriation of Plaintiffs' business plan and bottle/cork design would be located in Texas or Mexico.  Most likely, third-party witnesses to the alleged tortious interference with business relationships, asserted against Defendants, Olsen and Spirit of Hartford, would be found in Connecticut or San Antonio, Texas.  All potential third-party witnesses would be outside the reach of this Northern District's subpoena power.

The Court is convinced that Texas is a more convenient forum than Ohio for those individuals offering relevant testimony in this dispute.

**Public interest**

Upon consideration of this factor, the Court finds that the arguments from both sides

-14-

are in equipoise.  Both Texas and Ohio would possess a strong interest in monitoring businesses incorporated within their respective borders, and in enforcing contracts entered into by their citizens.

### III. CONCLUSION

For all these reasons, and after weighing the case-specific factors, public-interest factors and private concerns, the Court finds, pursuant to 28 U.S.C. § 1404(a), for the convenience of parties and witnesses, and in the interest of justice, that venue is appropriate in the United States District Court for the Western District of Texas.

Therefore, in light of this decision, the Court declines to rule on the merits of Defendants' alternative requests for dismissal under Fed.R.Civ.P. 12(b)(6), Fed.R.Civ.P. 8 and Fed.R.Civ.P. 9(b).  The above-captioned matter is transferred to the United States District Court for the Western District of Texas for further proceedings.

**IT IS SO ORDERED.**

**s/ Christopher A. Boyko**
**CHRISTOPHER A. BOYKO**
**United States District Judge**

**Dated:  June 28, 2013**